**Pages 1 - 19**


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Rita F. Lin, Judge


AYAN SHAH, et al,                )
                                 )
                    Plaintiffs,  )
                                 )
          vs.                    )  **NO. 3:25-cv-05123-RFL**
                                 )
ALISSA EMMEL,                    )
                                 )
                    Defendant.   )
_____  )


San Francisco, California
Tuesday, January 27, 2026

**<u>TRANSCRIPT OF MOTION HEARING</u>**

**<u>APPEARANCES:</u>**

For the Plaintiffs:

                    THE GALATI LAW FIRM
                    8080 Old York Road, Suite 204
                    Elkins Park, PA 19027
             BY:    **MATTHEW T. GALATI, ATTORNEY AT LAW**

                    RED EAGLE LAW
                    5256 S. Mission Road, Suite 135
                    Bonsall, CA 92003
             BY:    **CURTIS LEE MORRISON, ATTORNEY AT LAW**



REPORTED REMOTELY BY:   Andrea Bluedorn, RMR, CRR, CRC
                        Official United States Reporter

**APPEARANCES:**    (CONTINUED)

For the Defendant:

                        UNITED STATES ATTORNEY'S OFFICE
                        450 Golden Gate Avenue, Ninth Fl
                        Box 36055
                        San Francisco, CA 94102
                 **BY:   SAVITH IYENGAR, ATTORNEY AT LAW**

**Tuesday, January 27, 2026**                                          **1:37 p.m.**

                          P R O C E E D I N G S

                              ---o0o---

        **COURTROOM DEPUTY:**  Calling civil action 25-5123, Shah, et al, versus Emmel.  Counsel, please state your appearances for the record beginning with counsel for plaintiffs.

        **MR. GALATI:**  Hi.  Matthew Galati on behalf of plaintiffs as lead counsel, pro hac vice.

        **MR. MORRISON:**  Curtis Morrison on behalf of plaintiff's local counsel.

        **MR. IYENGAR:**  Good afternoon, Your Honor.  Savith Iyengar Assistant U.S. Attorney on behalf of the Government.

        **THE COURT:**  Good afternoon to all of you.  Thank you for the briefing which is very helpful.  I put out a summary of my tentative reasoning after reviewing the briefing.  I'm open to hearing from the parties if you think there's anything else I ought to know.

        I think it makes the most sense to ask plaintiffs to respond to the tentative first and then I can hear further from the defendant so let's start with plaintiffs.

        **MR. GALATI:**  Thank you, Your Honor.  Again, this is Matthew Galati on behalf of the plaintiffs and good afternoon.

        Your Honor, we certainly agreed with your initial analysis that we had stated a claim under the complaint.  Our focus then would be that discovery would be needed and then the

parties could proceed to summary judgment.  We of course disagreed with the need for an administrative appeal and we believe that any such appeal would be futile.

Zooming out a bit, in the grander scheme of why we're here and the procedural posture in this case as well as each individual immigrant's timeline, it's very clear in this case that the agency will not take action under the EB-5 Reform and Integrity Act unless and until it is sued.  As we alleged in our complaint, the only reason that we believe that the -- apologies, my phone may have been too close to the microphone. My apologies for that.  Hopefully this is better.

We believe that the only reason that the agency finally got around to initiating the termination notices which trigger the paragraph M protections under the RIA is simply because the agency was sued in 2024 by plaintiff Rajvir Batra. I was counsel in that case.  I had lengthy discussions with opposing counsel.

It took a large number of continuances and discussions to finally get those entered and to preserve Mr. Batra's status.  It is a different procedural standpoint than these plaintiffs, but, nonetheless, preserve that status.  We believe that as a matter of luck, former plaintiff Shah was issued his paragraph M -- his paragraph M benefits under the RIA as a good faith investor simply as a matter of timing.  And had the plaintiffs tried appeal to their case after the decision, the

requisites -- the condition precedent as put by the Government that a termination was issued would not have been available.

We believe that the -- as stated on the USCIS administrative appeal office's website, the office only has power to apply USCIS policy.  It doesn't have the power to create USCIS policy.  As stated before, we do not believe this policy would have been created without independent litigation and that's why we're here today.

Accordingly, we think a futility exception is applicable here and should be afforded to plaintiffs and the lawsuit to continue.

**THE COURT:**  Now, I understand that position which was pretty clear from the briefing, but what is really on my mind though is that the inquiry in terms of the futility is not just, -- you know, what's my best guess of what the agency is likely to do but whether it's -- it's legally futile for you to even attempt to do that because the agency has already staked out before the litigation a position that they will never hold off on someone's adjudication of their petition because of the fact that the regional center's slated for termination.

And I didn't see anything in the complaint or the papers that really allowed me to draw the conclusion that the agency has a blanket policy where they will never hold off on adjudicating a petition until after the termination has gone through.  And in fact, I see the litigation position in this

case as saying, essentially, agency can do whatever it wants in terms of sequencing; they can decide to terminate now, they can decide -- and then adjudicate the petition or they can decide to adjudicate first and terminate later.

And in a situation where the agency has discretion to consider what order to do things, it would seem to me that we have to give them a chance to do the right thing first. Tell me what's wrong with that view.

**MR. GALATI:** Thank you, Your Honor.

In the reply brief, the agency did make that argument, but it is clear that the policy at issue -- while not as explicit as the Court has framed it -- the agency's policy is clearly that a determination must occur before the good faith investor benefits may attach. Now, we did bring that up in the initial complaint, so Exhibit A of the initial complaint, ECF 11, is the EB-5 questions and answers page as available on USCIS.gov as of June 11th, 2025.

Importantly, that was after the Batra litigation. So at the time of us filing the complaint, the agency clearly had a policy that the paragraph M benefits could not attach to our plaintiffs. As I stated before, it was a matter of luck essentially that they were attached to plaintiff Shah. His case was denied on the grounds that there wasn't termination, even though there was -- and while the --

**THE COURT:** Let me just cut in because I think I'm

having a fundamental disconnect with you and I want to give you a chance to address it.  I did see that information in the complaint and the exhibit but it seems to me that what the agency is saying is if today is June 1st and if we're adjudicating a petition and the regional center has not been terminated, you don't get these good faith investor protections.

But what that policy does not say that the agency is prohibited from holding off on making a decision one way or the other until after termination.  In other words, I don't see that document as incompatible with the agency deciding we're just not going to make a decision one way or another on the petitions if the regional center issue is slated for termination, which I think is -- would be the approach that would be most consistent with what the statute mandates and, you know, is the reason why I think you have a legitimate and plausible claim in the first case but I don't see anything in that document that prohibits the agency from recognizing that and just holding off on a decision until after the termination is complete.

So let me give you an opportunity to tell me if you think there's something in there that ties the agency's hands in that regard.

**MR. GALATI:**  Not at all, Your Honor.  We believe that the agency could hold affected immigrant investor petitions

forms I-526 forms, I-526E, forms I-829 in an abeyance until a termination occurs.  Unfortunately that's not what happened here.  Had that happened here, we wouldn't be here today.

Only two plaintiffs, Plaintiff Shah and Plaintiff Batra from the previous litigation, have received any kind of benefits from those.  Excuse me, there was another lawsuit that was filed where a different investor did, but, again, that's not necessarily germane to today amongst fund 18 investors -- excuse me.

Our -- our crux of the complaint is that the agency broke -- the agency had a clear congressional deadline.  That deadline needs to be read in conjunction with the paragraph M benefits for good faith investors.  The agency's position that it may delay termination from the point of a regional center violating the law indefinitely, the Court correctly noted and to put an -- make the entire good faith investment positions of the statute completely null.

And so our focus with the complaint was that the congressional intent was clearly overridden by the delay in terminating the regional center.

**THE COURT:**  Thank you.  Let me give the defendant an opportunity to respond.

**MR. IYENGAR:**  Thank you, Your Honor.

**THE COURT:**  And raise any issues that you have with the tentative at the same time.

**MR. IYENGAR:**  Thank you, Your Honor.

Well, I certainly agree with the Court's tentative views on futility based on the agency's discretion here.  I just wanted to address one other item, Your Honor, that's in the Court's tentative reasoning which is whether plaintiffs did a plausible claim under the APA.  And I just want to emphasize the Government's view that the Court, you know, doesn't need to reach this item in its order because plaintiffs need to exhaust first.  But if the Court does reach it, we believe the Court should actually find that plaintiffs fail to state a claim under the APA.

As the Court knows, plaintiff's claim that adjudicating their petitions after termination of the regional center became mandatory violated the APA, the argument being that the petitions should have been held in abeyance from the date the termination became mandatory until the center was terminated and that by not doing so, the agency violated the APA.  And I just want to emphasize the APA standard, Your Honor, which only creates a limited cause of action when the agency has a discrete and legally required duty.  And judicial review is not available under the APA if the agency's decisions are committed to its discretion by law.

And we really believe, Your Honor, that a contrary finding here that the agency should have held the petitions in abeyance the moment the regional center's deadline to pay

lapsed is not required by the statute and it actually raises some important practical concerns.  Requiring the Government to know and act immediately after something becomes mandatory by operation of a party's inaction, it almost seems like faulting the Government for not getting someone off of the road the moment their driver's license lapses.

The administrative process takes time.  The agency is juggling other pressing work.  And, importantly, the agency needs to prioritize the order of operations and the deadlines that Congress actually mandates that it follows.  And there's many examples of this in the law -- in immigration law too.

One relevant one is the N400 naturalization application.  You know, the applicant submits the application and then the agency is required to first conduct an interview and then has 120 days to adjudicate the application after the interview, and once that time passes, the applicant can ask the district court to decide the matter instead.  But here, there's no mandatory duty to act in a particular sequence and there's no right of action created in Federal Court if that sequence isn't followed.

And, Your Honor, Congress absolutely could have said that when an agency considers a petition link to a regional center, it should first consider that regional center's continuing compliance before deciding the petition, and I don't think that's an implausible expectation.  You know, the Court

has seen the statute and it's incredibly, almost punishingly, detailed but Congress didn't do that in the statute and Congress knows how to add a provision that would require an agency to hold a petition in abeyance too.  It does so in the same section under different circumstances in 1153(b)(5)(M)(v).

So I just wanted to say in conclusion, Your Honor, this just raises a couple of core concerns when we have the written order that suggests that plaintiffs can bring an APA claim here.  I think the two concerns are, first, it of course raises separation of power concerns because allowing an APA claim would effectively require the Court to write in a provision creating a mandatory duty to act that doesn't exist. You know, that mandates the order that the agency must adjudicate investor petitions relative to regional center oversight.

And it would require the agency, here the USCIS, to allocate its limited enforcement resources differently than Congress has required it to.  And I think the second issue is that it would open the floodgates to litigation since anyone can allege that the Government knew or should have known some information or some omitted information and when but Congress expressly established here what actions or inactions are in accordance with the law including how to sequence the agency's evaluation of information or the failure to submit information and how to make decisions based on what the agency learns and

when.

And lastly, Your Honor, I'll note that according to data as of September 22nd, 2025, there were 580 approved regional centers.  So if courts can use the APA to get involved in every enforcement action involving these centers and sequence a decision making based on enforcement, it's not only a separation of powers issue but it would impede the agency's ability to balance its competing priorities and limited resources.

So for those reasons, we would ask the Court to grant the motion to dismiss, either by affirming that plaintiffs have no APA cause of action here or not reaching that issue and basing the Court's decision on failure to exhaust without suggesting an APA claim might exist.

**THE COURT:**  One question I have for you about the theories that you outlined is it seems to me that I can understand the points you made if the rule were anytime there is a pending termination of a regional center like the regional centers missed their deadline to pay and they're slated for termination you can never decide any petitions in that interim period if it would deprive people of their good faith protections.  But maybe there's a different calculus in a situation where the agency specifically is aware of the fact that this particular regional center has been slated for termination.  It's had correspondence with counsel about the

fact that the regional center's slated for termination and has been specifically requested to hold off on the petition and to terminate first and then has made a recent decision to ignore that and move forward anyway with adjudicating knowing that it needs to terminate down the road at some point.

So -- and it does not seem to me to be a situation where you need to devote any more resources, it just means you devote less resources.  You don't adjudicate the petition until you're done with the termination.  So it -- that's all to say I understand your point that we don't necessarily have to reach this issue if I find administrative remedies are not exhausted.

But, at the same time, it seems to me that this is enough to require fact development to understand, you know, what were the considerations for the agency, were they aware of all of this information and in a situation where an agency is aware of this information and consciously chooses to disregard it, is that arbitrary and capricious and is it contrary to the law.  That sounds to me like a plausible claim.  I'm interested in hearing what you have to say about that because if I do think there's no plausible claim, then really I shouldn't send plaintiffs around this whole administrative exhaustion rabbit hole that is pointless, but my sense is that there is a claim so it makes essential for them to exhaust their remedies and then potentially to come back to the Court.

**MR. IYENGAR:**  I think, Your Honor -- I think Congress

was well aware of all of the things we're discussing and made it a decision not to include -- include that language in the petition that would mandate -- or, sorry, in the statute that would mandate a particular consequence under any circumstances, and I think Congress might have been aware of, you know, the tremendous amount of inbound communication that that agency might receive with 580 of these centers or in general agencies do receive a lot of -- a lot of mail and some might be correct and some might not be.  But it's essentially sort of forcing an agency to sort of evaluate an issue simply based on, you know, the receipt of letters from -- you know, that may or may not be correct.  In this case, they were correct.

But, you know, I think that that is a consideration that Congress was certainly capable of conducting and ultimately had decided against, you know, adding a statute.  I think we do need to be mindful of that.  And I also think that with respect to the second point, you know, I think that the agency does have broad discretion.  I think Your Honor is right about that.  That's part of the reason why I articulated this, you know, APA argument the way I did.

And so I don't know that it necessarily precludes the Court from finding plaintiffs failed to exhaust and give the agency an opportunity to reevaluate the application pursuant to like a proper exhaustion process.

**THE COURT:**  One question I have for you about the

agency discretion is is it -- is it your view then -- is it the Government's view that the agency could just hold off on termination as long as it wanted and it could just never terminate any of these regional centers, put it at the bottom of its list for priorities, and then just adjudicate all of the pending petitions that are involved with these regional centers before it ever gets around to termination.

**MR. IYENGAR:**  No.  I don't think that's the agency's position.  There's certainly a mandatory duty to act and there is -- I know of there is APA case law that considers the length of a -- of a delay.  In the National Parks Service context, I think there was a delay of decades with respect to a mandatory duty to act with respect to the Tule elk and so I think there are circumstances in which a delay would be a problem.

You know, for what it's worth, Your Honor, I don't know that the facts here would warrant, you know, that type of concern.  I don't think that the complaint suggests that the Government tried to enter on the good faith investor protections and how to decide the petition.  The dates seem to suggest otherwise.

They didn't terminate the regional center days after deciding the petitions.  They read the petitions between February 1st and March 1st of 2024 and terminated the regional center like six months later on July 29th, 2024, and one of the petitions was actually denied after.  So there wasn't a type of

sequencing here that I think would lead the Court to be concerned about that -- that type of problematic behavior.

**THE COURT:**  I understand what you're saying about other provisions of the ADA that -- or APA that prevent an agency from endlessly delaying mandated actions.  But putting that aside, let's say we don't have like a decades long delay, we just have a period that's long enough for the agency to terminate all of the petitions that are associated with the regional center.  And I know you're saying that that's not this case but I want to understand what the Government's position is.

Is the Government's position that the -- that USCIS could terminate all of the petitions associated with the regional center knowing that that regional center's slated for termination and all of these folks would normally be entitled to good faith investor protections, just go ahead anyway, terminate all of their petitions, and then a few days later terminate the regional center.  Is there anything wrong with that in your view?

**MR. IYENGAR:**  I -- I think, Your Honor, that the issue -- the issue that I think comes to mind is -- the -- what's wrong with that would be that it would allow anyone who simply alleges that the Government knew certain information before it made the decision as to their petition to maintain an APA cause of action, and it would require, you know, potentially -- it

would require the agency to be involved in potentially dozens if not hundreds of cases based on a mere allegation that the agency knew something at a certain point in time.  And I would say, Your Honor, that with respect to statutes like this and programs like this, there's a lot of information that the agency receives and evaluates within the context of the statute.  There's some provisions that we pointed out that don't call for termination but call for suspension or fines and other stuff.

So there's a lot of information that comes in that the agency is weighing before it reaches a decision.  I think your particular --

**THE COURT:**  But just to be -- just to put a finer point on it, is it your view that the agency has the discretion to choose to wait until they're done adjudicating all of the petitions pertaining to a regional center before terminating it?

**MR. IYENGAR:**  Is it my view, Your Honor, that the agency could have a policy of or practice of intentionally waiting to adjudicate a center -- waiting to decide whether a center has continued in -- is in compliance until it's denied all of the petitions associated with that center?

**THE COURT:**  Yes.  Is it your view that that is within the agency's discretion under the APA?

**MR. IYENGAR:**  Under the statute, it is.  Under the

APA, I think it would depend on the facts of a particular case. I think the standard would have to be pretty high, Your Honor, to state a claim under the APA given that it's a limited -- a statute that concerns limited rights to a cause of action.

**THE COURT:**  Thank you.  I appreciate and I understand the Government's position of that.

I appreciate the oral argument.  It was very helpful for me on all of these points.  Let me take the matter under submission and issue an order.

Thank you, all.  Be well.

**MR. IYENGAR:**  Thank you, Your Honor.

**COURTROOM DEPUTY:**  Court is adjourned.

**MR. MORRISON:**  Thank you.

(Proceedings adjourned at 2:02 p.m.)

---o0o---

## **CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Wednesday, January 28, 2026.


*Andrea K Bluedorn*
_____
Andrea K. Bluedorn, RMR, CRR
Official United States Reporter